UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
TEDDY SANCHO, : **MEMORANDUM**
: **DECISION AND ORDER**
Petitioner , :
: 16 civ. 0868 (BMC)
- against - :
:
JOSEPH T. SMITH, Superintendent, :
Shawangunk Correctional Facility, :
:
Respondent. :
------------------------------------------------------------ X

**COGAN**, District Judge.

Petitioner seeks habeas corpus relief under 28 U.S.C. § 2254 in connection with his conviction for first and second degree robbery, for which he was sentenced to concurrent terms totaling 15 years. The facts will be more fully stated below as necessary to address each of petitioner's points of error, but to summarize, petitioner, acting as a "collector" for a person named Fabian Sullivan, robbed the victim, Percy Buthelezi, by reaching into his pocket and taking cash that was there. Petitioner then showed the victim a gun as they drove to the victim's house to get more money. Petitioner, later the same night, with two accomplices, beat the victim and took his cell phone.

Petitioner raises four points of error: (1) the trial court erred in sustaining the prosecutor's reverse Batson objection; (2) there was insufficient evidence to support the verdict or the verdict was against the weight of the evidence; (3) trial counsel was ineffective for failing to move to strike the victim's testimony that his children had been threatened; and (4) petitioner was deprived of due process when the trial court refused to submit lesser included offenses to the

jury. Some of these points are not cognizable on federal habeas corpus and the others are without merit. The petition is therefore denied.

## I. Reverse <u>Batson</u> Ruling

During jury selection, the prosecutor objected to the fact that petitioner had used his peremptory challenges to strike four out of five prospective jurors who were of Asian origin. The trial court conducted the three step inquiry required by <u>Batson v. Kentucky</u>, 476 U.S. 79, 106 S. Ct. 1712 (1986), and found that while defense counsel had offered reasonable explanations for striking three of those four, his explanation for striking the fourth was pretextual. Specifically, defense counsel stated that he had no real reason for striking the juror except he thought there were already enough women on the jury. The trial court therefore disallowed the peremptory challenge and seated the juror. On direct appeal, the Appellate Division held that petitioner's argument was "partially unpreserved for appellate review and, in any event, without merit." <u>People v. Sancho</u>, 124 A.D.3d 806, 807, 998 N.Y.S.2d 660, 661 (2d Dep't) (citation omitted), <u>leave to app. denied</u>, 26 N.Y.3d 934, 17 N.Y.S.3d 97 (2015) (table).

The Appellate Division's ruling is not subject to review on federal habeas corpus because federal habeas corpus permits review only of constitutional error, and the Supreme Court has never held that there is a right under the United States Constitution to peremptory challenges. I cannot say it better than Chief Judge Amon did in <u>Boston v. Brown</u>, No. 10-cv-1494, 2014 WL 726683, at *11-12 (E.D.N.Y. Feb. 24, 2014):

> [T]he exact issue here does not implicate the constitutional concerns raised in either <u>Batson</u> or its progeny. A challenge to a successful reverse-<u>Batson</u> motion is largely the same as a claim for the wrongful loss of a peremptory challenge. "When a defendant is deprived of the right to exercise a peremptory challenge," however, "that action does not violate a defendant's federal rights." <u>Minton v. LaValley</u>, No. 10-cv-5140, 2012 WL 1646889, at *3 (S.D.N.Y. May 10, 2012).

2

As the Supreme Court has stated:

> [P]eremptory challenges are not constitutionally protected fundamental rights; rather, they are but one state-created means to the constitutional end of an impartial jury and a fair trial. This Court repeatedly has stated that the right to a peremptory challenge may be withheld altogether without impairing the constitutional guarantee of an impartial jury and a fair trial.
>
> [Georgia v.] McCollum, 505 U.S. [42]at 57 [(1992)]. "Because peremptory challenges are within the States' province to grant or withhold, the mistaken denial of a state-provided peremptory challenge does not, without more, violate the Federal Constitution." Rivera v. Illinois, 556 U.S. 148, 158, 129 S.Ct. 1446, 173 L.Ed.2d 320 (2009). Rather, so long as "a defendant is tried before a qualified jury composed of individuals not challengeable for cause, the loss of a peremptory challenge due to [a] state court's good faith error ... is a matter for the State to address under its own laws." Id. at 157. Because such a loss … "does not violate a defendant's federal rights," it cannot, by extension, form the basis of relief on federal habeas review.

(some citations omitted or edited).

Here, petitioner does not contend that the composition of his jury deprived him of due process; rather, his only claim is that he was denied due process because he did not get the peremptory challenge that he wanted. That is not a ground for habeas corpus relief. See also Occhione v. Capra, 113 F. Supp. 3d 611 (E.D.N.Y. 2015); Pinto v. Walsh, No. 09-cv-5419, 2014 WL 2594416 (E.D.N.Y. June 10, 2014). His point of error is therefore denied.

## II. Insufficient Evidence/Verdict Contrary to the Weight of the Evidence

Most of the evidence against petitioner came from the victim of the crime, Buthelezi, and Buthelezi's girlfriend, Kristin Bridges. Buthelezi drove a "dollar van" rented from Sullivan, known to him as "Shaba." Sullivan was demanding that Buthelezi reimburse him for traffic tickets on the van as well as paying him overdue rent. Petitioner's conviction arose out of two incidents stemming from this obligation, what I will refer to as the "first degree" incident and the "second degree" incident.

3

As to the first degree incident, Bridges testified that petitioner had come to her house and she had observed him carrying a gun. She told Buthelezi that petitioner was looking for him and had a gun. Buthelezi testified that after receiving this call from Bridges, petitioner found him with the van, and told him he needed to go meet with Shaba. Petitioner then pushed Buthelezi, reached into his pants pocket, and took out about $100. He then ordered Buthelezi into the van, telling him that they were going to see Shaba. Buthelezi convinced petitioner to instead accompany him to his (Buthelezi's) home first because he could come up with some more money. On the trip over, petitioner lifted the leg of his pants so that Buthelezi could observe a gun holstered on petitioner's ankle

When they arrived at Buthelezi's house, Buthelezi ran inside and locked the door. Petitioner banged on the door for about 15 minutes but then left, taking the van.

The second degree incident occurred several hours later. Buthelezi left his house to go to a corner store. He bought cigarettes and then walked to a friend's house nearby. As he was leaving, he received a call saying from someone he knew who also worked for Sullivan saying he was bringing the van back to him. The van pulled up to him as he was leaving his friend's house, and three men emerged, including petitioner. Petitioner struck him in the face as Buthelezi was attempting to dial 911 on his cellphone, at which point he fell. All three proceeded to punch and kick him, and petitioner pulled out some hair by the roots. After they were done beating him, petitioner took Buthelezi's cell phone and the assailants left.

Buthelezi eventually made it back to his house and the next morning, woke up in severe pain. He decided to call the police after threats were made to his children.

At the conclusion of the prosecutor's case, defense counsel moved to dismiss and the trial court denied the motion. On appeal, petitioner's appellate counsel argued that there was

4

insufficient evidence to show that he displayed a firearm during the first incident, as required for first degree robbery, or that he had formed an intention to rob Buthelezi during the second robbery, as required for second degree robbery. The Appellate Division ruled that the evidence was "legally sufficient to establish the defendant's guilt of robbery in the first degree and robbery in the second degree." Sancho, 124 A.D.3d at 806, 998 N.Y.S.2d at 661.[1]

As to petitioner's claim of legal insufficiency, because the Appellate Division decided this point on the merits, its decision attracts the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d)(1). That statute requires petitioner to demonstrate that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to the relevant Supreme Court precedent. Williams v. Taylor, 529 U.S. 362, 405, 120 S. Ct. 1495 (2000) (internal quotation marks omitted). A state court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner." Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432 (2005). The Supreme Court has made clear that the AEDPA standard of review is extremely narrow, and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal[.]" Ryan v. Gonzales, __U.S.__, 133 S. Ct. 696, 708 (2013). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

---

[1] The Appellate Division also rejected petitioner's point that the verdict was against the weight of the evidence. This point is not cognizable on federal habeas corpus review, as it does not raise a constitutional issue but merely a discretionary exercise of the Appellate Division's prerogative under state law. See, e.g., Scission v. Lempke, 784 F. Supp. 2d 237 (W.D.N.Y. 2011). It will therefore not be considered here.

5

'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 88, 131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140 (2004)). Since Harrington, it has repeatedly admonished Circuit Courts for not affording sufficient deference to state court determinations. See, e.g., White v. Wheeler, 577 U.S. __, 136 S. Ct. 456, 460 (2015) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court'", quoting, Burt v. Titlow, 571 U. S. __, __, 134 S. Ct. 10, 16 (2013)).

The standard for reviewing claims of legal insufficiency is well established. The inquiry is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781 (1979). Thus, even when "faced with a record of historical facts that supports conflicting inferences, [the habeas court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. Relief on a sufficiency claim cannot be granted unless the record is "so totally devoid of evidentiary support that a due process issue is raised." Bossett v. Walker, 41 F.3d 825, 830 (2d Cir. 1994) (internal quotation marks omitted).

Petitioner comes nowhere near to meeting the dual hurdle imposed by the narrow standard of federal habeas corpus review coupled with the equally narrow grounds for setting aside a jury conviction. Petitioner's point as to the first degree incident is that he did not accomplish the offense by displaying a pistol (a required element of first degree robbery) – he just reached into the victim's pocket. Petitioner argues, therefore, that there was no evidence that

6

he deliberately displayed the gun, even if petitioner happened to see it on the ride over to his house.

But a jury could rationally find that the first degree incident did not consist solely of the removal of the money from the victim's pocket. It could find that the incident started when petitioner went to the victim's home to steal money, showed the gun to the victim's girlfriend and told her to tell the victim that he was looking for the victim, and continued when he forced the victim to drive to his house for more money. It could also rationally find that petitioner deliberately, as opposed to accidentally, exposed his ankle holster to further intimidate the victim on the ride over. At the very least, the Appellate Division's conclusion that a jury could rationally view the facts in this manner was not contrary to, or an unreasonable application of, Supreme Court authority.

The second degree incident is also hard to attack for insufficient evidence. Essentially, the argument is that petitioner intended to beat the victim, and stealing his phone was merely an afterthought, not part of a premeditated plan. But a jury could rationally find that since the very purpose of the encounter was to get whatever petitioner could out of the victim through intimidation, taking his cellphone, which he had been using in an attempt to summon help, was in furtherance of the robbery. Certainly, at some point during the incident, petitioner formed the intent to take the cellphone, and immediately preceded the taking with the use of force. The Appellate Division had to determine legal sufficiency through its own construction of state law, and none of the cases petitioner cited required a different assessment of the elements of the crime. Again, the Appellate Division's decision is not contrary to or an unreasonable application of Supreme Court precedent.

This point of error is therefore rejected.

### III. Ineffective Assistance of Trial Counsel

Petitioner's trial was severed from that of Sullivan. Sullivan had been indicted not only in connection with the first and second degree incidents but with several additional counts of witness tampering involving Buthelezi's family. Petitioner was not charged with witness tampering.

During the cross-examination of Buthelezi, defense counsel brought out that Buthelezi had delayed calling the police until the morning after the incident. Buthelezi acknowledged that but added that "that call was made after threats were made to my kids." At sidebar, defense counsel indicated that he was going to bring out that only Sullivan was charged with witness tampering. The trial court, in a pretrial ruling, had prohibited the prosecution from going into the area of witness tampering since petitioner was not charged with it and the court was concerned with the prejudicial spillover. However, when petitioner's counsel announced at sidebar that he was going to address the topic, the trial court cautioned defense counsel that if he opened that door, Buthelezi would be permitted to talk about the threats. Defense counsel therefore dropped the topic and went on to another line of questioning.

On direct appeal and in this habeas petition, petitioner contends that his trial counsel was ineffective for not moving to strike Buthelezi's brief reference to threats against his children. The Appellate Division ruled that the claim was

> without merit. The defendant failed to show a lack of strategic or other legitimate reasons for defense counsel's conduct. Counsel may have refrained from moving to strike the testimony or for a mistrial so as not to draw further attention to that testimony. The evidence, the law, and the circumstances of the case, viewed in totality and as of the time of the representation, reveal that counsel provided meaningful representation.

Sancho, 124 A.D.3d at 806, 998 N.Y.S.2d at 661 (citations omitted).

Once again, petitioner has a difficult burden. He not only must overcome the narrow review standard of AEDPA, but he must also demonstrate the limited circumstances under which counsel will be proven ineffective. A petitioner claiming ineffective assistance of counsel must prove two things. First, petitioner must prove that counsel's representation "fell below an objective standard of reasonableness" according to "prevailing professional norms." Strickland v. Washington, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065 (1984). Second, petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. See also Hill v. Lockhart, 474 U.S. 52, 106 S. Ct. 366 (1985). In other words, petitioner "must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. Because this Court only considers whether the state court's determination was unreasonable, and because there is a strong presumption that counsel's assistance was effective, the standard of judicial review applicable to ineffective assistance of counsel claims under § 2254(d) is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420 (2009).

And again, petitioner cannot approach the required showing to obtain relief on this ground. The Appellate Division's ruling was not contrary to Strickland or its progeny in holding that trial counsel could well have had objectively reasonable grounds for not drawing more attention to Buthelezi's reference to threats – like avoiding highlighting the witness's testimony.

It is not even clear that a motion to strike would have been granted, and if not, that would have highlighted the testimony even more. Trial counsel made two reasonable, strategic choices: first, to attempt to point out that Buthelezi had waited an unreasonably long time after the two robberies to report them, thus throwing into question his version of the events; and second, when that strategy did not work because of Buthelezi's interjection of the reason for the delay, to not

9

make things worse by raising a potentially counterproductive or even unsuccessful motion to strike. Indeed, the sidebar discussion after the subject testimony made it clear that trial counsel was considering a third option, which was, contrary to the prejudice he had feared pretrial, actually drawing out that the threats came from Sullivan. But when the trial court warned him that this might open a Pandora's box into how involved his client may have been in Sullivan's threats, he chose to just let the matter lay where it was.

In short, the exchange shows just the opposite of a reckless or thoughtless attorney; it shows a carefully considered series of strategic decisions which, at most, can only be questioned with the use of hindsight. Strickland does not brand an attorney's careful consideration of consequences at each step of the trial an indicator of objective unreasonableness just because the strategy does not succeed.

There is also no way to reasonably find that the second prong of Strickland, prejudice, was demonstrated. The reference of the witness to threats was brief and unexplained. Although it did not know the charging status, the jury was well aware that Sullivan was the driving force behind petitioner's crimes, stood the most to lose, and that there were other "players" involved in intimidating Buthelezi (one of whom, one of the three assailants, was a co-defendant in petitioner's case). There is no reason to think that the jury necessarily tagged petitioner with Buthelezi's vague reference to threats.

Although the discussion above would be equally apropos in the context of de novo review, I again emphasize that that is not the standard here. Petitioner has to show that the Appellate Division's decision was not just wrong under Strickland, but so wrong that no reasonable jurist could think that it was right. He has failed to meet that standard.

**IV. Failure to Submit Lesser Included Offense**

10

Petitioner contends that the trial court erred in rejecting his counsel's request to submit the offense of petit larceny as a lesser included offense to both the first and second degree robbery charges. The trial court declined, and the Appellate Division upheld that ruling, holding that "[t]here is no reasonable view of the evidence that would support a finding that the defendant committed the lesser crime of petit larceny but not the greater crimes of robbery in the first degree and robbery in the second degree." Sancho, 124 A.D.3d at 806, 998 N.Y.S.2d at 661.

This is also a state-law issue that is not reviewable on federal habeas corpus. I again adopt the ruling of my colleague Judge Matsumoto in Sostre v. Lee, No. 11-cv-3439, 2013 WL 3756474, at *6 (E.D.N.Y. July 15, 2013):

> Although the Supreme Court has held that due process requires a trial court to submit jury instructions on lesser included offenses in capital cases if the evidence warrants the charge …, neither the Supreme Court nor the Second Circuit has decided whether the failure to instruct the jury on lesser-included offenses in noncapital cases is a constitutional issue that may be considered on a habeas petition … .
>
> Further, in Teague v. Lane, the Supreme Court found that "habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure." 489 U.S. 288, 316, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Accordingly, in Jones v. Hoffman, the Second Circuit held that because a decision interpreting the Constitution to require the submission of instructions on lesser-included offenses in non-capital cases would involve the announcement of a new constitutional rule, Teague precluded consideration of that issue under habeas corpus review. 86 F.3d 46, 48 (2d Cir.1996). Thus, "in the [Second Circuit], habeas review of a state trial court's failure to instruct on lesser-included offenses in noncapital cases is precluded." Franklin v. Ercole, No. 06–CV700, 2009 WL 763417, at *13 (E.D.N.Y. Mar. 19, 2009); see also Rasmussen v. Kupec, 54 Fed. App'x 518, 519 (2d Cir.2003) (citing Jones, 86 F.3d at 48); Bien v. Smith, 546 F.Supp.2d. 26, 42–43 (E.D.N.Y.2008) (finding petitioner's claim not cognizable where petitioner challenged the trial court's refusal to charge manslaughter in the first degree as a lesser-included offense of murder in the second degree); Maldonado v. West, No. 05–CV–3132, 2007 WL 188684, at *6 (E.D.N.Y. Jan. 22, 2007) (noting that "the effect of Knapp and Jones is to preclude habeas review of a state trial court's failure to instruct on lesser-included offenses in noncapital cases").

(some citations edited or omitted).

I concur with this analysis, and therefore decline to consider petitioner's point of error.

## CONCLUSION

The petition is denied and the case is dismissed. The Clerk is directed to enter judgment accordingly. A certificate of appealability shall not issue. See 28 U.S.C. § 2253(c). The Court certifies pursuant to 28 U.S.C. § 1915 (a)(3) that any appeal from the Court's Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
       March 24, 2016